IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08cv453
3:04cr256

| | | |
|---|---|---|
| RUSSELL EARL MILLER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court for an initial review of Petitioner's Motion to

Vacate, Set Aside, or Correct Sentence (Doc. No. 1).

## PROCEDURAL HISTORY

On September 24, 2004, Petitioner was named in a two-count Bill of Information

charging him with possession and distribution of child pornography in violation of 18 U.S.C. §§

2252(a)(2) and 2252(a)(5)(B). (Case No. 3:04cr256, Doc. No. 9). On September 24, 2008, the

parties filed a revised plea agreement with the Court. (Case No. 3:04cr256, Doc. No. 10).

Petitioner, pursuant to the terms of the plea agreement, entered a guilty plea at his Rule 11

hearing before the magistrate judge on September 30, 2004. (Case No. 3:04cr256, Doc. No. 12).[1]

On October 3, 2005, this Court sentenced Petitioner to 135 months' imprisonment on Count One

and 120 months' imprisonment on Count Two to run concurrently. In determining Petitioner's

---

[1] At that time, Petitioner also waived his right to be indicted. (Case No. 3:04cr256, Doc.
No. 11).

sentence, this Court found that under the United States Sentencing Guidelines (the "Guidelines"), Petitioner had an offense level of 32 and a criminal history category of I. (Case No. 3:04cr256, Doc. No. 41: Sent'g Tr. at 14). Judgment was entered on October 14, 2005. (Case No. 3:04cr256: Doc. No. 26).

On October 24, 2005, Petitioner filed a Notice of Appeal. (Case No. 3:04cr256: Doc. No. 28). On March 8, 2007, the United States Court of Appeals for the Fourth Circuit affirmed Petitioner's sentence and conviction. United States v. Miller, 221 F. App'x 182 (4th Cir. Mar. 8, 2007) (unpublished per curiam opinion). Petitioner filed a petition for writ of certiorari with the Supreme Court which was denied on October 1, 2007. Miller v. United States, 128 S. Ct. 143 (2006) (mem.).

Petitioner then timely filed the instant Motion to Vacate, Set Aside, or Correct his sentence. (Doc. No. 1). In his Motion and its supporting Addendum, Petitioner alleges that he received ineffective assistance of counsel. Specifically, Petitioner first alleges that his counsel failed to fully explain paragraph 18 of his plea agreement, which waived his right to challenge his sentence under Apprendi v. New Jersery[2] and Blakely v. Washington.[3] (Doc. No. 1: Motion at 4). Petitioner next alleges that his counsel was ineffective for negotiating a plea agreement that waived his rights while placing him in no better position than had he simply pled guilty before the Court absent a plea agreement. (Doc. No. 1: Motion at 5).

---

[2] 530 U.S. 466 (2000).

[3] 542 U.S. 296 (2004).

**ANALYSIS**

## I. INITIAL REVIEW AUTHORITY

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether a petitioner is entitled to any relief on the claims set forth therein.  In the event it is determined that a petitioner is not entitled to relief, the reviewing Court must dismiss the motion.  Id.

Following such directive, this Court has reviewed Petitioner's Motion to Vacate and the pertinent record evidence.  As hereafter explained, such review clearly establishes that Petitioner is not entitled to any relief on his claims.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review

Petitioner's ineffective assistance of counsel claims are  governed by the holding in Strickland v. Washington, 466 U.S. 668, 687-91 (1984).   In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish: (1) that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness; and (2) that he was prejudiced thereby because there is a reasonable probability that but for the error, the outcome would have been different.  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance.  Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir.1995).  Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297.  If the petitioner fails to meet this burden, a "reviewing court need not

consider the performance prong." Id.

If a petitioner claims ineffective assistance of counsel to challenge his conviction entered pursuant to a guilty plea, courts have held that no prejudice exists unless "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988 ) (quoting Lockhart). Here, however, Petitioner does not allege that he would have insisted on going to trial; he merely claims that he would have been better off entering a guilty plea without a plea agreement, thereby preserving his rights of appeal. (Doc. No. 2: Motion Addendum at 2). Thus, Petitioner's claim is facially insufficient to establish ineffective assistance of counsel and fails on that ground alone. Even if, however, the Court were to consider not whether Petitioner would have insisted on going to trial, but whether he would have insisted on foregoing a plea agreement and entering a plea on his own, his claim would still fail under the Strickland analysis.

**B.** **Petitioner's claim of ineffective assistance of counsel fails the Strickland test.**

Petitioner essentially makes two claims of ineffective assistance of counsel in his Motion and its supporting Addendum: one specific and one general. Specifically, Petitioner states that his counsel was ineffective for failing to fully explain that "paragraph 18 of his revised plea agreement contained a waiver of rights under [Apprendi and Blakely], the holdings of which were unknown to defendant, and which he later learned provided his only legitimate avenue for a sentence reduction." ( Doc. No. 1: Motion at ¶ 12(a)). Petitioner alleges that had he understood the consequences of this provision, he would not have signed his plea agreement. (Id.). More generally, Petitioner reads the whole of his plea agreement as nothing more than a one-sided

"contract of adhesion" that benefitted the government but waived most of his fundamental rights as a defendant. (Doc. No. 2: Motion Addendum at 2-4). As such, Petitioner claims ineffective assistance of counsel because "no right thinking lawyer interested in anything other than terminating his own involvement in the case[ ] would ever have recommended that it be signed." (Id. at 4). After review, the Court finds that neither posturing of Petitioner's claim of ineffective assistance of counsel satisfies the Strickland test.

> 1.  The record shows that Petitioner's counsel adequately apprised him of the terms of his plea agreement, including his waiver of rights under Blakely and Apprendi.

At his plea hearing, the magistrate judge engaged Petitioner in a lengthy colloquy to ascertain whether his plea was both knowing and voluntary. During that colloquy, Petitioner swore that he understood the following terms of his plea: (1) that he could not later withdraw his guilty plea, even if the Court sentenced him above the government's recommendation (Case No. 3:04cr256, Doc. No. 12: Entry and Acceptance of Plea at ¶ 14); (2) that the right to appeal his conviction and sentence had been expressly waived; (Id. at ¶ 24); (3) that he had waived certain rights under Apprendi and Blakely, "including the right to have facts that are essential to the determination of punishment charged in the indictment, proven to a jury and/or proven beyond a reasonable doubt" (Id. at ¶ 26); and (4) that the Blakely waiver in his plea agreement allowed the Court to determine his sentence based upon facts not put before a jury, but found by the Court by a preponderance of evidence (Id. at ¶ 27). Petitioner swore that he had discussed the terms of his plea agreement and applicable Guidelines provisions with his attorney (Id. at ¶¶ 10 and 31), and that he was satisfied with the representation of his attorney (Id. at ¶ 32).

The Court, in accordance with the law, is entitled to rely heavily on the representations

that Petitioner made at his Rule 11 Hearing.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); see also United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991) (holding that statements made by a defendant during a Rule 11 proceeding constitute "strong evidence of the voluntariness of his plea").  This Court is cognizant of the fact that Petitioner is a college graduate who was nine credits short of a Master's Degree in History when he answered these questions during his colloquy before the magistrate. (Case No. 3:04cr256: Presentence Report at ¶ 77).  Moreover, Petitioner failed to raise any concerns about the waiver at his sentencing hearing, where he affirmed his prior responses.  (Case No. 3:04cr256, Doc. No.41: Sent'g Tr. at 2-3).  Nor did he raise any concerns about his plea agreement while giving his lengthy allocution.  (Id. at 33-38).  In light of Petitioner's education level and his responses at both his plea hearing and his sentencing, the Court finds that  Petitioner's counsel adequately apprised him of the terms of his plea agreement, including his waiver under Apprendi and Blakely, before he pleaded guilty.  The record simply does not support Petitioner's claim to the contrary.

The Court notes that even if Petitioner's counsel met the first prong of the Strickland test by failing to advise him of his waiver of rights under Blakely and Apprendi, Petitioner could not establish prejudice.  His assertion that he would never have signed the agreement had he understood those waivers is not, on its own, sufficient: "Although it carries some probative value, such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision."  Hooper, 845 F.2d at 476.  Thus, the Court evaluates Petitioner's Apprendi and Blakely waivers objectively, finding no resulting prejudice because there is no cognizable claim that Petitioner could have

asserted under either precedent.

Apprendi held that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 476 (quoting Jones v. United States, 526 U.S. 227, 243 (1999)). Here, although the Court relied on its own finding that Petitioner possessed over 4,000 pornographic images to increase his offense conduct under the Guidelines (Case. No. 3:04cr256, Doc. No. 1: Sent'g Tr. at 14), this finding did not increase Petitioner's sentence beyond 240 months' imprisonment, the maximum penalty under 18 U.S.C. § 2252(a)(2), the statute under which Petitioner was convicted. Moreover, this Court explicitly noted that it would have sentenced Petitioner to the same sentence—135 months' imprisonment, which is within the Guidelines range using an offense level of either 31 or 32—whether it had made this finding or not. (Id. at 43). Even if erroneous, the Court's finding did not alter Petitioner's sentence. See Fed. R. Crim. P. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded."). Petitioner therefore gave up nothing by waiving his right to challenge his sentence under Apprendi.

The same is true of Blakely, which held that a state sentence that departs from an otherwise mandatory guideline range must have its basis in additional facts found by a jury or admitted by the defendant. Blakely, 542 U.S. at 303-04. First, the United States Supreme Court did not apply this portion of the Blakely holding to federal sentencing, choosing instead to make the Guidelines advisory rather than mandatory. United States v. Booker, 543 U.S. 220, 258-59 (2005). Second, Petitioner's sentence of 135 months' imprisonment did not depart from the Guidelines; it was within the Guidelines sentencing range for Petitioner's offense level/criminal

history category of either 31/I (108-135) or 32/I (121-151); and the Court indicated that a

sentence of 135 months was the "sufficient but not greater than necessary" sentence regardless of

which offense level was consulted under the advisory Guidelines. (Case No. 3:04cr256, Doc.

No. 41: Sent'g Tr. at 43); see also 18 U.S.C. § 3553(a). Thus, Blakely also provides no grounds

to challenge Petitioner's sentence. Even if the first prong of the Strickland test could be met, that

counsel's performance was constitutionally defective, no prejudice occurred. Hooper, 845 F.2d

at 475.

2.    The remainder of Petitioner's plea agreement cannot establish ineffective
       assistance of counsel because there is no reasonable probability that
       Petitioner would have refused its terms.

With regard to the rest of his plea agreement, Petitioner attempts to establish ineffective

assistance of counsel by arguing that its terms, taken as a whole, are so unfair that they prove his

counsel's performance fell below an objective standard of reasonableness.[4] Petitioner further

claims that the plea agreement provided him with "absolutely no benefit . . . whatsoever," noting

that pleading guilty absent a plea agreement would still have given him a three-point reduction to

his offense conduct for acceptance of responsibility under U.S.S.G. § 3E1.1. (Id. at 1-2).

Without making an inquiry into the diligence or negotiation efforts of Petitioner's counsel, the

_____

[4] Petitioner lists the following, inter alia, as unfair provisions in his plea agreement: (1)
Paragraph 1, which allows the sentencing court to use uncharged conduct as "relevant conduct"
under the Guidelines; (2) Paragraph 5, which stipulates and recommends to the sentencing court
the applicable Guidelines provisions; (3) Paragraph 11, which bound Petitioner to the guilty plea
he entered before the magistrate, although the government could rescind the agreement if
Petitioner failed to adhere to its terms; (4) Paragraph 15, which waives his right to contest his
conviction and sentence except for ineffective assistance of counsel, prosecutorial misconduct, or
sentencing inconsistent with Petitioner's plea agreement; and (5) Paragraphs 20 and 21, which
obligated the defendant to provide the government with truthful assistance but gave the
government sole discretion on whether to seek a downward departure based on this assistance.
(Doc. No. 2: Motion Addendum at 2-4).

Court finds this claim to be without merit because there is no reasonable probability that Petitioner would have refused the agreement and, thus, no resulting prejudice. Hooper, 845 F.2d at 475; Fields, 956 F.2d at 1297.

Petitioner grossly understates the actual or potential benefits of his plea agreement. Although it did not bind the Court, Petitioner's plea agreement required the government to stipulate that he possessed between 300 and 600 pornographic images. (Case No. 3:04cr256, Doc. No. 10: Plea Agreement at ¶ 5(g)). This number is significantly lower than the number of images it appears that Petitioner actually possessed (Case No. 3:04cr256, Doc. No. 41: Sent'g. Tr. at 14), and it meant the difference between an offense level of 32 and 31 under the Guidelines. (Id.); U.S.S.G. § 262.2(b)(7). By agreeing to the stipulation, the government attempted to reduce Petitioner's offense level and, thus, his sentencing exposure. Although the Court ultimately made a contrary finding (Case No. 3:04cr256, Doc. No. 41: Sent'g. Tr. at 14), the image stipulation certainly benefitted Petitioner at the time he agreed to it and during his sentencing hearing.

Even more significant is the fact that the plea agreement effectively served to truncate the government's investigation of Petitioner, which could have led to additional charges against him. Petitioner entered into his plea agreement on September 24, 2004, one day after the government filed its Bill of Information (Case No. 3:04cr256, Doc. No. 9). At sentencing, the United States Attorney admitted that at the time both parties entered into the plea agreement, a forensic exam of Petitioner's computer was not yet complete. (Case No. 3:04cr256, Doc. No. 41: Sent'g Tr. at 6). By waiving his indictment and entering into a plea agreement immediately, Petitioner effectively avoided additional charges that a complete investigation might have revealed.

Additionally, Petitioner's plea agreement included a stipulation recommending that this Court order $17,500 in victim restitution in lieu of the additional $17,500 to $175,000 fine authorized by statute and outlined in U.S.S.G. § 5E1.2(c)(3). (Case No. 3:04cr256, Doc. No. 10: Plea Agreement at ¶ 6). At sentencing, this Court followed that recommendation, waiving all fines contingent on Petitioner's compliance with an order for restitution. (Case No. 3:04cr256, Doc. No. 41: Sent'g Tr. at 47). Thus, the plea agreement helped Petitioner avoid a fine where one otherwise could have been imposed.

Petitioner also overstates the severity of the various terms of the plea agreement that did not benefit him. Although Petitioner claims they are "unfair," they are largely standard provisions of any plea agreement. Given the facts of this case and the strength of the government's proof, it is unlikely that Petitioner could have held out for a better deal. And although Petitioner's plea agreement waived some of his rights to appeal, none of these waivers actually put Petitioner in a worse position than had he preserved his rights by entering a guilty plea absent a plea agreement. As is discussed supra, there are no claims that Petitioner could have asserted under either Apprendi or Blakely. Moreover, Petitioner was still able to seek appellate review of this Court's finding regarding the number of pornographic images he possessed, which the Fourth Circuit upheld for harmless error. Miller, 221 F. App'x at 186. In short, there is no viable claim that Petitioner could have raised on direct or collateral review of his sentence but for the terms of his plea agreement.

After evaluating the entire plea agreement objectively and at the time it was signed, the Court finds no reasonable probability that Petitioner would have refused the agreement and its terms. Thus, even if the first prong of the Strickland test could be met, that counsel's

performance was constitutionally defective, no prejudice occurred. Hooper, 845 F.2d at 475; Fields, 956 F.2d at 1297.

## CONCLUSION

The Court's initial review of the Petitioner's Motion to Vacate and the relevant record evidence conclusively shows that Petitioner has failed to establish that he received ineffective assistance of counsel. Therefore, Rule 4(b) of the Rules Governing Section 2255 Proceedings requires this Court to dismiss the instant Motion to Vacate.

**THEREFORE, IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) is **DISMISSED**.

Signed: October 20, 2009

Robert J. Conrad, Jr.
Chief United States District Judge